Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| RICARDO JIMÉNEZ FIGUEROA<br><br>Peticionario<br><br>v.<br><br>CHARLOTTE HERNÁNDEZ RODRÍGUEZ<br><br>Recurrida | KLCE202300369 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.:<br>D DI2019-0381<br><br>Sobre:<br>Custodia |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Rivera Marchand y la Juez Aldebol Mora

Domínguez Irizarry, Juez ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de abril de 2023.

El peticionario, señor Ricardo Jiménez Figueroa, comparece ante nos para que dejemos sin efecto la determinación emitida por el Tribunal de Primera Instancia, Sala de Bayamón, el 24 de marzo de 2023, notificada a las partes el 27 de marzo de 2023. Mediante el referido dictamen, el foro primario autorizó un plan de relaciones maternofiliales supervisadas entre la menor CJH y la aquí recurrida, señora Charlotte Hernández Rodríguez, y decretó el relevo de la intervención de la doctora Janet Alicea como la perito a cargo de estructurar un plan de reunificación familiar en el caso.

Por los fundamentos que anteceden, se deniega la expedición del auto solicitado.

**I**

Durante la vigencia de su unión, los comparecientes procrearon a la menor CJH. Tras su separación, ejercieron la custodia compartida de la niña. El 21 de agosto de 2021, la recurrida fue privada de la custodia de la menor, ello a tenor con una orden de protección *ex parte* emitida al amparo de lo dispuesto

en la Ley para la Seguridad, Bienestar y Protección de Menores, Ley 246-2011, 8 LPRA sec. 1101 *et seq.* En consecuencia, y tras mediar la correspondiente solicitud, el 16 de septiembre de 2021, el Tribunal de Primera Instancia otorgó la custodia provisional de la niña al aquí peticionario. El asunto se refirió a la Unidad de Trabajo Social del tribunal para que se efectuara un estudio y recomendación de cambio de custodia. Dicha gestión particular se encomendó a la trabajadora social Coralis Morales Torres.

Así las cosas, el 24 de noviembre de 2021, el Tribunal de Primera Instancia ordenó que la menor continuara un previo tratamiento psicoterapéutico con su psicólogo, el doctor Luis Díaz Rosado, dirigido a trabajar un proceso de reunificación familiar. Igualmente, a tal efecto, el tribunal ordenó que, durante la vigencia de la orden de protección de referencia, la recurrida también completara un tratamiento psicológico.

Así las cosas, el 31 de marzo de 2022, la trabajadora social Morales Torres presentó el informe del estudio que le fue encomendado. En lo concerniente, recomendó que el peticionario continuara ostentando el derecho de custodia sobre la menor CJH y que las relaciones maternofiliales se llevaran dentro de un contexto terapéutico con el psicólogo de la niña. No obstante, toda vez que la recurrida anunció su intención de impugnar el mismo, el Tribunal de Primera Instancia señaló la celebración de la correspondiente vista de impugnación, audiencia que se llevó a cabo durante los días 27 de octubre y 23 de noviembre de 2022.

El 16 de diciembre de 2022, se emitió la *Resolución* pertinente a la vista de impugnación. Conforme surge de la misma, durante el proceso se aludió a la orden por la cual se requirió que, tanto la menor CJH, como la recurrida, participaran de un tratamiento psicoterapéutico transicional para lograr la reunificación familiar. Con relación a ello, el tribunal hizo constar que la recurrida culminó

su tratamiento de salud mental con el doctor Miguel A. Rivera Cuadrado. A su vez, se estableció que los doctores Rivera Cuadrado y Díaz Rosado, dieron cumplimiento a una orden emitida el 6 de junio de 2022, ello en cuanto a intercambiar sus impresiones sobre los tratamientos que respectivamente ofrecieron a la recurrida y a la menor CJH. Sobre ello, el Tribunal de Primera Instancia expresamente consignó en la *Resolución* que, a juicio de los galenos, la menor estaba preparada para iniciar un proceso de reunificación familiar con su madre. Ahora bien, en lo atinente, surge del dictamen de referencia que los aquí comparecientes acordaron que el plan de reunificación familiar fuera atendido por la doctora Janet Alicea. Se desprende de la *Resolución* que, con fecha del 14 de diciembre de 2022, se ordenó a la doctora Alicea remitir al tribunal un plan de trabajo estructurado, con expresión de citas programadas encaminadas a reunificar a la menor CJH con su madre, en un plazo de cinco (5) días. Igualmente, en su pronunciamiento, el Tribunal de Primera Instancia reconoció que, a dicho momento, la recurrida no se había relacionado con la menor. Precisa destacar que, conforme surge de los documentos que obran en el expediente de autos, mediante *Orden* del 26 de octubre de 2022, tras acoger un acuerdo entre las partes, la doctora Alicea fue designada por el Tribunal de Primera Instancia para intervenir en el asunto.

Así las cosas, y luego de ciertas incidencias, el 1 de febrero de 2023, la recurrida compareció ante el tribunal primario mediante una *Urgente Moción en Torno a Moción Informativa,* ello en respuesta a una previa comparecencia efectuada por la trabajadora social Jessica Santiago Torres, funcionaria incorporada al caso. En lo atinente, la recurrida expuso que, contrario a lo informado por esta, la doctora Alicea no había acatado las órdenes emitidas por el Tribunal de Primera Instancia, a los efectos de coordinar y

estructurar un plan de reunificación familiar entre ella y la menor CJH. Específicamente, indicó que la última vez que sostuvo una comunicación directa con la doctora Alicea, fue el 19 de noviembre de 2022, conversación que no constituyó una entrevista formal. Añadió que, pese a que en la vista celebrada el 23 de noviembre de 2022, el Tribunal de Primera Instancia fue enfático al precisar el deber de la doctora Alicea en el caso, esta no dio cumplimiento al mismo. Al respecto, expresó que esta nunca coordinó entrevistas a las partes, citas, ni suscribió los informes que le fueron requeridos dentro de los plazos judiciales provistos. A su vez, destacó que llevaba año y medio sin tener contacto con su hija, por lo que calificó la conducta de la doctora Alicea como injustificada y dilatoria del proceso de reunificación judicial ordenado. De este modo, la recurrida solicitó al Tribunal de Primera Instancia que ordenara a la doctora Alicea, en un término improrrogable de cinco (5) días, detallar la programación de citas, someter el informe estructurado que se le solicitó en octubre de 2023, todo con mención de las entrevistas realizadas, so pena de ser relevada de sus funciones.

En respuesta, mediante *Orden* del 6 de febrero de 2023, el Tribunal de Primera Instancia requirió a la trabajadora social Santiago Torres coordinar una entrevista con la menor, a fin de auscultar su preparación para iniciar un plan de relaciones maternofiliales supervisadas. Días después, el 24 de febrero de 2023, la funcionaria presentó un documento intitulado *Moción de la Unidad Social*. En el mismo, informó que, tras entrevistar a la menor CJH, ello en cumplimiento con lo requerido por el tribunal, esta manifestó su deseo de relacionarse con la recurrida y con su hermano. Al respecto, expresó que, ante las expresiones de la niña, y en la consecución de su mejor bienestar emocional y psicológico, entendía que las relaciones maternofiliales en disputa debían iniciarse dentro de marco terapéutico de reunificación familiar. A

su vez, en el pliego, la Trabajadora Social hizo constar que la doctora Alicea informó que esperaba presentar el plan de reunificación familiar encomendado el 27 de febrero de 2023. De igual forma, la funcionaria también indicó que el Departamento de la Familia designó a una nueva trabajadora social al caso, a saber, la señora Elizabeth Méndez, quien estaba en proceso de elaborar un plan de servicio para la recurrida.

El 7 de marzo de 2023, la recurrida presentó una *Urgente Moción Solicitando el Auxilio del Tribunal.* En particular, reiteró su previo reclamo en cuanto a que la única vez que tuvo comunicación con la doctora Alicea fue el 19 de noviembre de 2022 y que, con posterioridad a ello, esta no hizo acercamiento alguno para poder iniciar el plan de reunificación familiar. Sostuvo que habían pasado más de cuatro (4) meses desde que, por primera vez, el Tribunal de Primera Instancia ordenó a la especialista a cumplir dicha encomienda, sin que actuara de conformidad. La recurrida afirmó que la doctora Alicea no solo incumplió con las órdenes emitidas por el tribunal, sino que, también, efectuó falsas representaciones sobre sus gestiones. En cuanto a esto, destacó que, si bien se informó al tribunal que tenía proyectado presentar un plan estructurado de reunificación familiar para el 27 de febrero de 2023, pasada una semana de dicha fecha, no había actuado de conformidad. Así, la recurrida solicitó al Tribunal de Primera Instancia que extendiera a la doctora Alicea un término perentorio de cinco (5) días para cumplir con su obligación y que, en defecto de ello, se le relevara de su participación en el caso. El 14 de marzo de 2023, la recurrida presentó una *Segunda Moción en Auxilio de Jurisdicción* en la que reprodujo sus previos argumentos.

El 15 de marzo de 2023, el Tribunal de Primera Instancia emitió una *Orden* en virtud de la cual señaló la celebración de una vista argumentativa presencial para dirimir los méritos de las

mociones en auxilio de jurisdicción sometidas por la recurrida. En el dictamen correspondiente, el foro primario ordenó, no solo la comparecencia de las partes, sino, también la de las funcionarias Santiago Torres y Méndez.

Así las cosas, y tras mediar un escrito de réplica por parte del peticionario respecto a las mociones en auxilio de referencia, el 24 de marzo de 2023 se celebró la vista argumentativa antes indicada. Conforme surge de la *Minuta* correspondiente, la doctora Alicea no había brindado ningún servicio de los requeridos. Igualmente, se hizo constar que la trabajadora social Méndez no compareció a la vista, pero le expresó a la trabajadora social Santiago Torres que la recurrida se mostró cooperadora y receptiva al plan de servicio que se le había provisto. De igual forma, se notificó al tribunal que la trabajadora social Méndez ofreció estar a cargo de supervisar las relaciones maternofiliales. A su vez, se desprende de la *Minuta* que la trabajadora social Santiago Torres realizó múltiples gestiones para comunicarse con la doctora Alicea que resultaron infructuosas. En particular, esta afirmó que, pese a que esta le indicó que habría de someter un plan de trabajo sobre reunificación familiar el 27 de febrero de 2023, no cumplió con ello. Igualmente, según se hizo constar, durante la vista, la trabajadora social Santiago Torres indicó que, luego de entrevistar a la menor CJH, la observó comunicativa y asertiva. En particular, estableció ante el tribunal que la niña le manifestó extrañar a su mamá y a su hermano, así como que tenía unas inquietudes que deseaba dialogarlas con la recurrida.

El 27 de marzo de 2023, el Tribunal de Primera Instancia notificó la *Resolución y Orden* aquí recurrida. Mediante la misma, ordenó que, "[p]ara evitar sobreponer a la menor a otro profesional

de la salud"[1], se diera paso a las relaciones maternofiliales entre la recurrida y la menor CJH, ello bajo la supervisión de la trabajadora social Méndez, por un término de una (1) hora, y sujeto a la frecuencia que la funcionaria intimara razonable. Igualmente, el foro *a quo* dispuso que, a los efectos de procurar el mejor bienestar de la menor, la Trabajadora Social y el doctor Díaz Rosado, psicólogo de la niña, colaboraran en conjunto. En su pronunciamiento, el tribunal primario ordenó al peticionario participar del proceso antes indicado según le fuera requerido y colaborar con el mismo. Igualmente, el Tribunal de Primera Instancia ordenó a la trabajadora social Santiago Torres dar seguimiento las citas y entrevistas pertinentes al plan de relaciones maternofiliales. Con relación a ello, la Juzgadora de instancia extendió a la trabajadora social Méndez un plazo de diez (10) días para presentar el correspondiente plan de relaciones materno filiales supervisadas. Finalmente, el Tribunal de Primera Instancia relevó a la doctora Alicea de intervenir en cualquier asunto relacionado al caso de epígrafe.

Inconforme, el 5 de abril de 2023, el peticionario compareció ante nos mediante el presente recurso de *certiorari.* En el mismo formula los siguientes señalamientos:

> Erró el Honorable Tribunal de Primera Instancia al omitir en la notificación de la vista a celebrarse una advertencia a las partes que se estaría considerando otros asuntos no cubiertos en las mociones del 7 y 14 de marzo de 2023 de la parte recurrida.

> Erró el Honorable Tribunal de Primera Instancia al establecer en su Resolución-Orden que el Departamento de la Familia ofrezca relaciones familiares supervisadas en lugar de un proceso terapéutico familiar.

> Erró el Honorable Tribunal de Primera Instancia al eliminar el requisito del proceso terapéutico y de esa forma, dejar sin efecto parte de una Resolución que es final y firme, sin antes garantizar el debido proceso de ley que le asiste al peticionario en una vista adjudicativa en sus méritos.

---

[1] Véase: Apéndice, Anejo 1: *Resolución y Orden,* pág.1.

Erró el Honorable Tribunal de Primera Instancia al denegar la solicitud de peticionario de que se nombre un psicólogo que pueda ofrecer las terapias sin cerciorarse que ello redundara en el mejor bienestar de la menor.

Luego de examinar el expediente de autos, y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

## II

Mediante la presentación de un recurso de *certiorari,* se pretende la revisión de asuntos interlocutorios que han sido dispuestos por el foro de instancia en el transcurso y manejo del caso que atienden. Distinto al ejercicio de sus funciones respecto a un recurso de apelación, el tribunal al que se recurre mediante el vehículo procesal del recurso de *certiorari* tiene discreción para atender el asunto planteado, ya sea expedir el auto solicitado o denegarlo. *800 Ponce de León v. AIG,* 205 DPR 163 (2020); *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580 (2011); *Pueblo v. Díaz de León,* 176 DPR 913 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). No obstante, esta discreción no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del

pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Constituye una norma judicial clara y establecida que los tribunales apelativos no "deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). La discreción es el más poderoso instrumento reservado al juzgador. *Rodríguez v. Pérez,* 161 DPR 637 (2004). Al precisar su alcance, el estado de derecho lo define como la autoridad judicial para decidir entre uno o varios cursos de acción, sin que ello signifique abstraerse del resto del derecho. *Citibank et al. v. ACBI et al.*, supra. Su más adecuado ejercicio está inexorablemente atado al concepto de la razonabilidad, de modo que el discernimiento judicial empleado redunde en una conclusión justiciera. *Citibank et al. v. ACBI et al.*, supra; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723 (2016); *García v. Asociación,* 165 DPR 311 (2005). En consecuencia, la doctrina establece que un tribunal incurre "en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando [el juez] le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable". *Citibank et al. v. ACBI et al.*, supra, pág. 736.

### III

Tras entender sobre el expediente que nos ocupa, resolvemos que no concurre criterio alguno que requiera que nos impongamos sobre lo resuelto por el Tribunal de Primera Instancia. Nada en los

documentos sugiere que, en el ejercicio de sus facultades, el tribunal primario haya incurrido en error de derecho o en abuso de la discreción que le asiste en la materia particular sometida a su escrutinio, de modo que competa soslayar la norma de abstención judicial que, frente a dictámenes como el de autos, regula nuestras funciones.

Es nuestro firme parecer que el pronunciamiento aquí recurrido obedece a una juiciosa y prudente gestión judicial dirigida, no solo a procurar el bienestar y protección de una menor de edad, sino, también, a salvaguardar los derechos que, en procesos como el de autos, le asisten a los padres. La determinación ante nos impugnada permite entrever que, en su gestión adjudicativa, el Tribunal de Primera Instancia consideró cautelosamente todas las circunstancias que involucran a los aquí comparecientes, así como, también aquellas que han afectado la debida disposición del asunto.

Según surge de los documentos de autos, el tribunal primario pudo constatar la conducta evasiva y dilatoria de la Perito que tenía a su haber estructurar un plan de reunificación familiar entre la menor de edad y su señora madre, quienes llevan más de un año y medio sin relacionarse. Por igual, conforme se desprende de la prueba que obra en el expediente que atendemos, se estableció ante el Tribunal de Primera Instancia que, permitir el curso de un plan de relaciones materno filiales supervisados, resulta favorable para la menor CJH. Sobre este particular, apuntamos a que, conforme se acreditó, la recurrida completó el programa de servicio de ayuda psicológica ordenado por el tribunal. A su vez, surge que, tanto los psicólogos que atendieron a las partes, como las funcionarias asignadas al caso, concluyeron que la niña estaba preparada para comenzar a relacionarse con la recurrida. Siendo así, toda vez que el Tribunal de Primera Instancia contó con elementos suficientes para sustentar su dictamen, nada de irrazonable vemos en que se

haya relevado a una profesional cuyo incumplimiento reiterado dilató los procesos y afectó la debida ejecución de los derechos de las partes involucradas. Igualmente, tampoco intimamos como incorrecto que se hayan favorecido un plan de relaciones maternofiliales entre una menor y su progenitora, quienes, conforme se estableció, se encuentran habilitadas para ello.

Sabido es que la custodia constituye el derecho de los padres sobre la tenencia física de sus hijos menores de edad, cuya principal implicación es ejercer sobre estos su cuidado inmediato. *Chévere v. Levis,* 150 DPR 525 (2000); *Torres, Ex Parte,* 118 DPR 469 (1987); *Nudelman v. Ferrer Bolívar*, 107 DPR 495 (1978). Ahora bien, el destino de los menores luego de disuelto su vínculo familiar, es una determinación a la cual los tribunales deben llegar a la luz de un análisis objetivo, sereno y cuidadoso de las circunstancias presentes en el caso, teniendo como único objetivo el bienestar del menor. *Estrella, Monge v. Figueroa Guerra*, 170 DPR 644 (2007). En tan delicada misión, están llamados a emplear su criterio y a considerar todos los elementos que resulten necesarios para emitir una conclusión acertada. Para esto, se hace meritorio que su facultad discrecional encuentre apoyo en aquellas circunstancias que, a su juicio, sirvan a los mejores intereses del menor, así como en la protección del derecho del padre no custodio para continuar su relación afectiva en la forma y extensión que se establezca. *Ortiz v. Meléndez,* 164 DPR 16 (2005).

La *Resolución* recurrida no muestra indicio alguno que nos plantee una preocupación genuina sobre el bienestar de la menor. Surge de la misma que el Tribunal de Primera Instancia, en el ejercicio de su discreción, tomó medidas cautelares suficientes y efectivas para velar por la protección de la niña, así como, también, por los derechos de la recurrida. En este contexto particular, destacamos que el foro primario requirió a la trabajadora social

Méndez estar en constante comunicación con el psicólogo de la menor CJH mientras se lleven a cabo las relaciones maternofiliales, a fin de atender todo asunto que, durante las mismas, amerite ser objeto de evaluación particular. A su vez, ordenó a la trabajadora social Santiago Torres dar seguimiento activo a las citas y entrevistas coordinadas por la trabajadora social Méndez. Del mismo modo, la determinación aquí impugnada, refleja la correcta gestión judicial de proteger la adecuada tramitación de los asuntos sometidos a su función. Siendo de esta forma, no podemos sino abstenernos de intervenir con la controversia traída a nuestra consideración. Así, por no concurrir los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, denegamos expedir el presente auto.

**IV**

Por los fundamentos que anteceden, se deniega la expedición del recurso de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones